Tri Star Auto Group,             :
            Petitioner        :
                            :   No.  549 C.D. 2017
       v.                  :
                            :   Submitted:  November 3, 2017
Workers' Compensation Appeal   :
Board (Bortz),             :
            Respondent     :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

*__OPINION NOT REPORTED__*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                FILED:  January 17, 2018

Tri Star Auto Group (Employer) appeals from the April 7, 2017 decision of the Workers' Compensation Appeal Board (Board), which affirmed the order of a workers' compensation judge (WCJ), granting a claim petition filed by James Bortz (Claimant).  Upon review, we reverse.

**Facts and Procedural History**

Employer is a collection of car dealerships with six locations primarily throughout western Pennsylvania.  In 2007, Employer hired Claimant as a commercial account manager with his primary location and office to be in McKeesport, Allegheny County, although the position required occasional travel.  During a meeting in September 2013, Employer told Claimant he was permitted to work at any of

Employer's other locations as long as he advised his supervisor where he was working. Because Claimant's work sometimes required him to travel, he was provided with a company vehicle, a cell phone, a laptop, and a gas card for the vehicle. He was also provided a mobile printer, which he kept at home. (WCJ's Findings of Fact (F.F.) Nos. 15, 17, 21, 22; Conclusions of Law (C.L.) No. 3; Reproduced Record (R.R.) at 266a.)

Claimant was involved in a single-vehicle accident in his company vehicle on October 30, 2013, and sustained injuries in the nature of a traumatic brain injury, a C7/T1 fracture resulting in paralysis, and a pelvic fracture. The accident occurred as Claimant was driving to his office in McKeesport from his home in Johnstown. Claimant filed a claim petition on November 20, 2013, and Employer filed an answer denying all material allegations. The parties agreed that the matter should be bifurcated for a preliminary determination as to whether Claimant was in the course and scope of employment at the time of the accident, and, if so, whether his claim should be barred because of a violation of a positive work order/work rule or a violation of law. The matter was assigned to a WCJ, who held multiple hearings. (F.F. Nos. 1, 3, 24; R.R. at 4a.)

Claimant's wife, Heather Bortz, testified regarding her husband's employment with Employer. She stated that Claimant was employed in fleet sales and that his schedule was such that he could work seven days a week because his work could be performed at home, at Employer's McKeesport office, or at another one of Employer's locations. She also testified that Claimant was provided a company vehicle, a cell phone, and a laptop. She stated that a typical day for Claimant began with checking his cell phone and laptop for messages and responding to phone calls, after which he would shower and work from home or set out for wherever his job required. On the day of the accident, Ms. Bortz testified that Claimant took their

daughter for an eye doctor appointment and then to school. She stated that Claimant then returned home to drop off the receipt for the eye doctor visit and that Claimant thereafter proceeded to work at Employer's McKeesport location. (F.F. No. 5.)

Claimant also presented testimony at a deposition. He testified that his job as a commercial account manager required him to seek new clients and to maintain the existing client base, which entailed traveling to deliver vehicles and to meet clients. He stated that he had a written employment contract, which set forth the terms of his compensation and included the use of a demonstrator ("demo") vehicle and fuel card to purchase gas for his commute and to use for business purposes. He stated that, while his prime location was at Employer's McKeesport location, he would have to travel to the Employer's other locations if the contract involved a non-Ford product since the McKeesport location was strictly a Ford dealership.[1] Additionally, he stated that he was not required to appear at his McKeesport office every day if his duties required him to be elsewhere and that he would sometimes work from home. Claimant testified that he did not have regular working hours and did not have to punch a time clock when he went into the McKeesport office. However, Claimant stated that, when he was not working at the McKeesport location, he would inform Employer regarding where he would be that day. Claimant stated that he sometimes works at the Blairsville, Somerset, or Uniontown locations and that he worked at the Tyrone location once or twice. (F.F. No. 6; R.R. at 265a, 273a-75a.)

Claimant further testified that he had an office at the McKeesport location with his name on the door for the duration of his employment in which he kept his business and personal effects but, when he worked at the other locations, he did not

---

[1] For example, Claimant indicated that if a client wanted another make of vehicle, such as a Chrysler, he needed to go to one of Employer's other locations that sold Chryslers to complete that sale. (F.F. No. 6.)

3

have an assigned office. Claimant estimated that he would spend approximately 50% of his time at the McKeesport location. With regard to his sales, Claimant testified that the majority of his fleet sales were Ford vehicles, which were processed at the McKeesport location. Claimant stated that his laptop could access all of his work programs except the program to process sales. (F.F. No. 6; Board's op. at 4.)

Claimant testified about a meeting he had with Jack Bartko, Employer's director of operations, and Keven Sergent, Employer's owner, in September 2013 to discuss his pay structure and schedule. Claimant testified that when he asked Mr. Sergent if it mattered to him where Claimant worked, his response was, "No, [Claimant], keep doing what your [sic] doing." (F.F. No. 6.) Claimant testified that he requested Mr. Bartko to clarify that arrangement with the other managers. Claimant indicated that he requested this so that he would not have to check in on a daily basis if he were working at Employer's Blairsville or Uniontown location because his direct manager would "pester" him if he were not working in McKeesport. (F.F. No. 6.)

With regard to the day of the accident, Claimant testified that he took his daughter to an eye doctor appointment and then to school, after which he returned to his house to pick up his laptop, check his email, and set out to work in McKeesport. Claimant stated that he was going to McKeesport because he had to process some sales before the end of the month. Claimant stated that he could not remember any additional details after leaving his driveway and beginning his travel to McKeesport. Finally, Claimant reviewed various text messages he exchanged with Guy Lettieri, Employer's sales manager, and Employer's policy that he signed regarding the use of "demo" vehicles. *Id.*

Mr. Bartko, Employer's director of operations who manages all six of Employer's locations, presented testimony on behalf of Employer. He stated that

4

Claimant was hired in September 2007 as the commercial account manager for the McKeesport location, which involved selling vehicles to commercial and fleet customers. He stated that Claimant was given a "demo" vehicle to be used on a daily basis for business purposes, including travel to and from his work location. Mr. Bartko also described the "demo" vehicle policy and protocol, which includes a requirement that the occupant use seatbelts and obey traffic laws, and stated that, if an employee did not abide by the protocol, the "demo" vehicle could be taken away. Mr. Barko noted that Claimant had his "demo" vehicle taken back for a six-month period for health reasons. (F.F. No. 7.)

Mr. Bartko stated that Claimant was required to report to work each day, Monday to Friday, from 9:00 a.m. to 5:00 p.m. He acknowledged that Claimant would sometimes need to go to other locations, but stated that, on those occasions, Claimant was required to inform the sales manager of where he would be. Mr. Bartko testified that Claimant's sales had to be processed by the end of the month, if he expected to be paid for them that month, and that Claimant had to go to the location where the car was sold in order to process the paperwork. He also indicated that Claimant was not set up with a home office because his job required him to make personal contact with the customers. *Id.*

Regarding the September 2013 meeting, Mr. Bartko stated that Claimant asked Mr. Sergent whether he cared where Claimant worked or whether Claimant needed to notify the sales manager if he would be working outside of the McKeesport office. Mr. Bartko acknowledged that Mr. Sergent replied that he did not care whether he was in the McKeesport office or making fleet sales contacts. Additionally, Mr. Bartko stated that Claimant only had an office at the McKeesport location and was not permitted to work from home. (F.F. No. 7.)

5

Finally, Mr. Bartko testified that in October of 2013, he was concerned about the number of sales that Claimant had processed for the month and communicated his concern to Claimant by text message. Further, Mr. Bartko stated that on October 29, 2013, he asked Claimant to come into the McKeesport office to process the remaining sales for the month. (F.F. No. 7.)

Employer also offered the testimony of Mr. Lettieri, the sales manager for the McKeesport office. Mr. Lettieri testified that he was Claimant's direct supervisor for seven months prior to the accident. Mr. Lettieri stated that Claimant was required to be at the McKeesport location to sell and deliver cars but stated that Claimant occasionally needed to be at other locations, in which case he needed to check in with Mr. Lettieri. Mr. Lettieri also stated that Claimant did not have permission to work from home and estimated that Claimant worked from the McKeesport office approximately 75% of the time. Finally, Mr. Lettieri stated that at the end of October 2013, he exchanged text messages with Claimant about processing his sales for the month. (F.F. No. 8; R.R. at 158a.)

Mr. Sergent, Employer's owner, testified at a hearing. He stated that, in 2007, he hired Claimant as a commercial sales manager. Mr. Sergent confirmed that Claimant's office was at the McKeesport location but noted that Claimant occasionally worked from other locations. Specifically, Mr. Sergent stated that Claimant would sometimes have to go to other locations to finalize sales of vehicles other than Ford models and that Claimant would sometimes make field visits to prospective and current customers. Mr. Sergent also confirmed that sales paperwork had to be generated from the office where the sale arose and he estimated that 80% to 100% of Claimant's sales were out of the McKeesport location. With regard to Claimant's "demo" vehicle, Mr.

6

Sergent testified that the purpose of "demo" vehicles was to demonstrate the product to customers, as employees should "drive what [they] sell." (F.F. No. 9.)

Mr. Sergent testified about the September 1, 2013 meeting during which Claimant's pay plan and work location were addressed. Mr. Sergent stated that he informed Claimant that it was acceptable for him to work at Employer's Blairsville or Uniontown locations, but that he needed to keep Mr. Lettieri apprised of his location. Mr. Sergent also testified that he told Mr. Lettieri, "it was okay for [Claimant] to work out of our sisters stores, but he was still required to check in and make his whereabouts known." *Id.* Mr. Sergent stated that Claimant's primary work location was not changed as a result of the meeting, and Claimant was not permitted to work from home. *Id.*

Employer offered the report and deposition testimony of Gregory Sullenberger, a crash reconstructionist and former state trooper, as well as the information from the crash data retrieval system of Claimant's vehicle, a Toyota 4Runner. Mr. Sullenberger testified that he performed an investigation of the circumstances of Claimant's accident by downloading and reviewing data from the airbag module, commonly referred to as the "black box," of the vehicle involved in the accident, as well as the police report, photographs of the accident, and Claimant's testimony. Additionally, Mr. Sullenberger stated that he visited the accident scene, took measurements and photographs, and contacted PennDOT to get information about traffic volume and crash data. (F.F. No. 10; R.R. at 492a-95a.)

Mr. Sullenberger noted that the collision occurred between the front right portion of Claimant's vehicle and a tree and boulder after the vehicle left the roadway. Mr. Sullenberger determined that the vehicle was coasting at approximately 75 miles per hour or faster prior to the collision and that, 1.6 seconds before impact, Claimant

7

applied the brakes but took his foot off the brake within a second before impact. Additionally, Mr. Sullenberger noted that Claimant was not wearing a seatbelt. Mr. Sullenberger was not able to provide a specific reason why Claimant's vehicle left the road, but opined that, if Claimant were not speeding and had worn a seatbelt, he would have maintained better control of the vehicle and suffered less severe injuries. Mr. Sullenberger indicated that he spoke with the police officer who responded to the accident, who indicated that he intended to charge Claimant with two summary offenses, but the charges never registered with PennDOT. Ultimately, Mr. Sullenberger concluded that Claimant violated the law by speeding. (F.F. No. 10; R.R. at 496a-515a.)

Employer also submitted the text message exchanges between Claimant and Mr. Bartko and Claimant and Mr. Lettieri regarding Claimant's need to process the paperwork for his October 2013 sales before the month's end. Employer additionally submitted its Employee Manual, which contained the provision regarding use of "demo" vehicles, stating that the vehicles must be operated within the posted speed limit and that the driver must obey all traffic regulations. (F.F. Nos. 11-12.)

**WCJ's 2015 Interlocutory Decision and Order**

By decision and order dated October 22, 2015, the WCJ concluded that Claimant sustained his injuries in the course and scope of his employment. The WCJ generally found all of the witnesses to be credible and noted that, with the exception of minor differences, all of their testimony was largely consistent with each other and with the documentary evidence. (F.F. No. 13.)

8

In his findings, the WCJ noted that Claimant had an office only at the McKeesport location where 80% to 85% of his sales were generated. Additionally, the WCJ found that Claimant was not permitted to work from home and that he spent between 50% to 75% of his days at the McKeesport location. However, the WCJ also found that Claimant's job required him to occasionally travel to Employer's other locations and to meet with customers, but that he was required to advise his supervisor of his whereabouts. As a result of the September 2013 meeting, the WCJ determined that Claimant was permitted to work at any of Employer's six locations, as long as he advised his supervisor where he was working. (F.F. Nos. 16, 17, 18, 19, 20, 22.)

The WCJ found that, on the day of the accident, Claimant was en route to the McKeesport location to process his outstanding October sales when he was involved in the one-vehicle accident. In so finding, the WCJ stated that he credited the evidence, including the text messages, which indicated that Claimant needed to go to the McKeesport location to finish the processing of his sales for the month. The WCJ relied upon Mr. Sullenberger's interpretation of the black box data in finding that Claimant was coasting at approximately 75 miles per hour shortly before the accident but briefly applied the brakes immediately before impact. The WCJ also found that Claimant was not wearing a seatbelt and that the responding police officer intended to charge Claimant with two summary offenses, but noted that no charges were ever processed, and that Claimant was not convicted of any offenses arising from the incident. (F.F. Nos. 23-27.)

Accordingly, the WCJ found that there was no evidence to demonstrate that the cause of the accident was the result of any intentional violation of law or positive order. The WCJ noted that Mr. Sullenberger was unable to formulate an opinion as to the actual cause of the accident, as the most he could offer was an opinion

9

that Claimant's injuries "likely" would have been less severe if he had been traveling at a lower speed or wearing a seatbelt. The WCJ further stated that, even if Mr. Sullenberger's testimony constituted a competent expert opinion, no opinion was tendered that Claimant's speeding caused the accident or any of his injuries. Additionally, the WCJ noted that the fact Claimant had not applied the gas or brakes (except briefly) in the seconds leading up to the impact "raised the possibility that he was either incapacitated or distracted immediately before the impact." (F.F. No. 28.) Thus, the WCJ found that an attempt to discern the true cause of the accident and Claimant's injuries based upon the record would be, "at best, educated speculation" in that there was no definitive proof offered by Employer regarding the impact, if any, of Claimant's alleged speeding and failure to wear a seatbelt. *Id.*

Ultimately, the WCJ concluded that Claimant did not have a fixed place of employment at the time of the injury and was in the course of his employment at the time of the motor vehicle accident. In so finding, the WCJ considered the "critical aspect of the case" to be the September 2013 meeting between Claimant and Mr. Bartko and Mr. Sergent, in which Mr. Sergent agreed that Claimant could work at any location he desired so long as he checked in with his supervisor. (C.L. No. 3.) Although the WCJ determined that the conversation was merely a ratification of their past practice, the WCJ stated that, in any case, it was clear from that point forward that Claimant was not required to report daily to the McKeesport office and could work from any of Employer's six locations, unless he was required to be elsewhere. *Id.*

Further, the WCJ concluded that, even if the conversation at the meeting had not occurred, Claimant would still have been an employee without a fixed place of employment in that his work locations were "very fluid depending upon his sales and customer contact." *Id.* The WCJ noted Claimant's estimate that he spent as little as

10

50% of his time in McKeesport and that he would sometimes go a full week without going to the office there. In further support of this point, the WCJ recounted that all of Employer's witnesses agreed that part of Claimant's job required him to travel to the other locations, which was borne out by the fact that he was given mobile communication devices as well as a vehicle and gas card. Finally, the WCJ relied on this Court's holding in *Holler v. Workers' Compensation Appeal Board (Tri Wire Engineering Solutions, Inc.)*, wherein we held, "The fact that an employer has a central office at which an employee sometimes works is not controlling." 104 A.3d 68, 71 (Pa. Cmwlth. 2014). (C.L. No. 3.)

Next, the WCJ determined that Claimant's claim petition was not barred by a violation of law or positive work order. Regarding Employer's argument that Claimant violated a positive work order because he was speeding and not wearing a seatbelt—both of which were against its policy on company vehicles—the WCJ noted that these actions were not so foreign to Claimant's job duties so as to suggest that he had abandoned them or rendered him a stranger to his work. Furthermore, the WCJ found that, because Employer could not show what impact, if any, these violations had on the accident, Employer failed to show that these violations caused or increased Claimant's injuries. (C.L. No. 5.)

Relatedly, the WCJ noted that Claimant was never charged with a crime as a result of the accident and concluded that his claim should not be barred for violation of a law. Moreover, the WCJ stated that even if Employer proved that Claimant engaged in misconduct by speeding and not wearing a seatbelt, the citations that the responding officer intended to charge him with were merely summary offenses

11

and not tantamount to a violation of the law under section 301(a) of the Workers' Compensation Act (Act).[2]  (C.L. Nos. 5, 7.)

**WCJ's 2016 Final Decision and Order**

On December 17, 2015, the parties entered a stipulation in which they agreed that Claimant had been disabled since October 30, 2013; Claimant's weekly disability rate was $917.00; Claimant gave timely notice of the injury to Employer; Claimant consented to supersedeas as to medical expenses, including any subrogation lien in the event of an appeal to the Board; and, although Employer might seek supersedeas for out-of-pocket expenses incurred by Claimant, Claimant did not agree to supersedeas for them.

On January 19, 2016, the WCJ issued a final order, fully incorporating the October 22, 2015 interlocutory decision and order.  The WCJ found that the December 17, 2015 stipulation that the parties entered into was fair to all parties and supported by the record, and therefore adopted and incorporated it into the decision.  (F.F. No. 10.)

The WCJ further determined that Claimant proved he suffered a compensable work-related injury, which disabled him, and granted his petition.  (C.L. No. 3.)  The WCJ ordered Employer to pay Claimant $917.00 per week beginning

---

[2] Section 301(a) of the Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §431.  Section 301(a) states, in pertinent part:

> Every employer shall be liable for compensation for personal injury to, or for the death of each employe, by an injury in the course of his employment, and such compensation shall be paid in all cases by the employer, without regard to negligence, according to the schedule contained in sections three hundred and six and three hundred and seven of this article: Provided, That no compensation shall be paid when the injury or death is intentionally self inflicted, or is caused by the employe's violation of law . . . but the burden of proof of such fact shall be upon the employer . . . .

October 30, 2013, as well as all work-related medical expenses and out-of-pocket expenses, and assessed 10% interest on all due and unpaid compensation. The WCJ further ordered Employer to pay $1,025.58 in litigation costs and 20% of the benefits as a reasonable attorney's fee to Claimant's counsel. Employer appealed to the Board, but the Board affirmed the WCJ's decision, noting (1) it was not uncommon for Claimant to travel among Employer's various business locations as part of his job duties; (2) Claimant was authorized to use a company demo vehicle as part of his job duties; and (3) Claimant was provided a gas card for the vehicle. (Board's op. at 13.)

## Petition for Review

Employer thereafter filed a petition for review with this Court,[3] alleging that the WCJ erred in concluding that (1) Claimant was in the course of employment at the time of the motor vehicle accident; (2) Claimant's petition was not barred by section 301(a) of the Act because of a violation of law; and (3) Claimant's claim petition was not barred because of a violation of a positive work order/work rule. Employer sought supersedeas from the Board pending this Court's decision, which was denied. Employer then sought supersedeas with this Court, which was granted with respect to medical expenses, including any subrogation lien, by order dated July 27, 2017.

## Discussion

In a workers' compensation proceeding, the WCJ is the ultimate fact finder and is the sole authority for determining the weight and credibility of evidence.

---

[3] Our scope of review is limited to determining whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704; *Meadow Lakes Apartments v. Workers' Compensation Appeal Board (Spencer)*, 894 A.2d 214, 216 n.3 (Pa. Cmwlth. 2006).

13

*Lombardo v. Workers' Compensation Appeal Board (Topps Company, Inc.)*, 698 A.2d 1378, 1381 (Pa. Cmwlth. 1997). "As such, the WCJ is free to accept or reject the testimony of any witness, including medical witnesses, in whole or in part." *Id.* The WCJ's findings will not be disturbed on appeal when they are supported by substantial, competent evidence. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995). "Substantial evidence is such relevant evidence which a reasonable mind might accept as adequate to support a finding." *Berardelli v. Workmen's Compensation Appeal Board (Bureau of Personnel, State Workmen's Insurance Fund)*, 578 A.2d 1016, 1018 (Pa. Cmwlth. 1990).

Moreover, where both parties present evidence, it is irrelevant that the record contains evidence which supports a finding contrary to that made by the WCJ; rather, the pertinent inquiry is whether evidence exists that supports the WCJ's findings. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

Additionally, on appeal, all inferences drawn from the evidence shall be taken in favor of the party prevailing before the WCJ. *Krumins Roofing and Siding v. Workmen's Compensation Appeal Board (Libby)*, 575 A.2d 656, 659 (Pa. Cmwlth. 1990).

Section 301(a) of the Act states, in relevant part,

Every employer shall be liable for compensation for personal injury to, or for the death of each employe, by an injury in the course of his employment, and such compensation shall be paid in all cases by the employer, without regard to negligence, according to the schedule contained in sections three hundred and six and three hundred and seven[ ] of this article: Provided, That no compensation shall be paid when the injury or death is intentionally self inflicted, or is caused by the employe's violation of law . . . but the burden of proof of such fact shall be upon the employer . . . .

14

77 P.S. §431. Under section 301(c)(1) of the Act, compensable injuries must occur during the course of employment while the employee is "actually engaged in the furtherance of the business or affairs of the employer." 77 P.S. §411(1). However, not compensable are "injuries sustained while the employe is operating a motor vehicle provided by the employer if the employe is not otherwise in the course of employment at the time of injury." *Id.*

Under the "going and coming rule," generally, injuries sustained while an employee is traveling to and from his place of employment are considered "outside the course and scope of employment," and not compensable. *Holler*, 104 A.3d at 71. However, such injuries will be considered to have occurred during the course and scope of employment if one of the following exceptions applies:

> (1) the claimant's employment contract includes transportation to and from work; (2) the claimant has no fixed place of work; (3) the claimant is on a special mission for employer; or (4) the special circumstances are such that the claimant was furthering the business of the employer.

*Id.* "The claimant bears the burden of proving his injuries were sustained in the course and scope of his employment. Whether a claimant was acting within the course and scope of his employment when his injury occurred is a question of law and is reviewable de novo." *Id.* at 70 n.3 (internal citation omitted).

Employees are classified as either stationary employees or traveling employees, and those who fall under the "no fixed place of work" exception are traveling employees. *Beaver & Casey, Inc. v. Workmen's Compensation Appeal Board (Soliday)*, 661 A.2d 40, 42-43 (Pa. Cmwlth. 1995). The determination of whether a claimant is a traveling employee is made on a case-by-case basis and takes into consideration "whether the claimant's job duties involve travel, whether the claimant

15

works on the employer's premises, or whether the claimant has no fixed place of work." *Holler*, 104 A.3d at 71 (quoting *Beaver & Casey, Inc.*, 661 A.2d at 42.) The course of employment is broader for traveling employees, who are exempt from the "going and coming rule." *Holler*, 104 A.3d at 71.

Additionally, the "fact that [a] claimant was injured while traveling home in [an] employer's vehicle does not automatically support a conclusion of law that the injury occurred in the course of employment." *Steckel v. Workers' Compensation Appeal Board (Have-A-Vend, Inc.)*, 53 A.3d 946, 950 n.3 (Pa. Cmwlth. 2012) (quoting *Wachs v. Workers' Compensation Appeal Board (American Office Systems)*, 884 A.2d 858, 863 (Pa. 2005)).

At issue here is the WCJ's determination that Claimant was without a fixed place of employment and, hence, was exempt from the "going and coming rule." Employer argues that such a determination is unsupported by the facts or the law and analogizes the present case to *Biddle v. Workmen's Compensation Appeal Board (Thomas Mekis & Sons, Inc.)*, 652 A.2d 807 (Pa. 1995) (project manager of a company that built and repaired bridges involved in a vehicular accident while driving home), *Davis v. Workmen's Compensation Appeal Board (Foodarama Supermarkets, Inc.)*, 398 A.2d 1105 (Pa. Cmwlth. 1979) (pharmacist for a supermarket involved in fatal accident while driving home from one of the stores in which he periodically worked), and *Steckel*, 53 A.3d at 946 (manager of coffee division of a vending company involved in vehicular accident after delivering a replacement coffee pot to a customer). In each of these cases, it was determined that the employees were not within the course of employment.

Employer distinguished *Holler*, in which this Court held that the cable technician-claimant was a traveling employee, emphasizing that the claimant did not

16

have "*any* office or *any* fixed worksite" and that his work was performed in the field at his customers' various locations. (Employer's brief at 18.) Employer asserts that, if *Holler*'s holding is not limited to its factual circumstances, it would lead to absurd results, including allowing the classification of "traveling employee" in every instance where the claimant works for an employer with multiple locations to which he occasionally must travel. For example, Employer asserts that attorneys who must travel to other counties to attend hearings or whose firms have multiple locations out of which they sometimes work, as well as Workers' Compensation Appeal Board members who travel to hear oral argument throughout the Commonwealth, would be considered employees without a fixed place of employment simply because their employer has multiple locations to which they occasionally must travel. Thus, Employer argues, if any of those employees were to be injured while commuting to their primary office, they would be considered within the course of employment because, under the WCJ's analysis here, they are employees without a fixed place of employment. Such a broad application, Employer argues, would lead to the conclusion that such employees are in the course of employment 24 hours a day unless there has been a clear deviation or departure.

With regard to Claimant, Employer asserts that, had he been injured while traveling between dealerships, he would have been in the course of employment; however, such was not the case, as Claimant was traveling from his home to the McKeesport location.

Employer also takes issue with the factors the Board relied upon in affirming the WCJ. Employer argues that the second and third factors—that Claimant was provided a demo vehicle and gas card for his job duties—are inapplicable because there was never an assertion in this case that Claimant was provided the vehicle and

17

card as part of an employment contract, as it asserts there was not an employment contract.[4] Employer cites section 301(c) of the Act, which states, in part, that "injuries sustained while the employe is operating a motor vehicle provided by the employer if the employe is not otherwise in the course of employment at the time of the injury" are not compensable. 77 P.S. §411(1). As to the remaining factor, that it was not uncommon for Claimant to travel among Employer's various locations as part of his job duties, Employer asserts this alone does not equate to Claimant being a traveling employee.

We agree that the present facts do not support the conclusion that Claimant was a traveling employee without a fixed place of employment. Here, the motor vehicle accident occurred while Claimant was traveling into the McKeesport office, where he spent up to 75% of his time and in which he maintained his sole office with his personal and business effects and name on the door, to perform his regular monthly processing of sales. Although Claimant did occasionally have to process his sales at other locations, on the day of the accident, Claimant was traveling to the McKeesport location, out of which he made 80% to 85% of his sales. Indeed, it is clear that Claimant was generally expected to come to the McKeesport office for work unless he had an articulable reason to be elsewhere. As such, Claimant's occasional work from the other locations was the exception, not the rule.

Based upon these facts, when considering the three factors for determination of whether a claimant is a traveling employee, it is clear that Claimant was a stationary employee because, while his job involved travel, Claimant had a fixed place of work, which was primarily on Employer's premises at the McKeesport location. *See Beaver & Casey, Inc.*, 661 A.2d at 42.

---

[4] Claimant testified that he had an employment contract with Employer but produced no evidence of the same.

18

Claimant's employment situation most closely resembles that of the decedent in *Davis*, who worked as pharmacist for a supermarket chain with several locations. 398 A.2d at 1106-07. The decedent primarily worked at the employer's Reading store but was expected, when necessary, to work at other locations. *Id.* On the day of the fatal car accident, decedent was returning home from the employer's Bethlehem store. *Id.* This Court determined that the decedent's injuries were not sustained in the course of employment.

Similarly, here, Claimant primarily worked from the McKeesport location, but was occasionally required to work at Employer's other locations as well. While we are sympathetic to Claimant's condition and the extent of his injuries, given the aforementioned circumstances, we cannot agree that the facts support the conclusion that Claimant was a traveling employee within the course of employment when his injuries occurred. Instead, because Claimant was a stationary employee, and because none of the remaining exceptions apply, the going and coming rule is applicable and, accordingly, the injuries he sustained during his commute to work did not occur within the course of his employment.

Accordingly, for the foregoing reasons, the order of the Board is reversed.[5]

_____
PATRICIA A. McCULLOUGH, Judge

---

[5] Based upon the above determination, we need not reach Employer's remaining arguments regarding whether an affirmative defense applies.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tri Star Auto Group,               :
            Petitioner      :
                                 :    No.  549 C.D. 2017
           v.                   :
                                 :
Workers' Compensation Appeal     :
Board (Bortz),                     :
           Respondent    :

## *ORDER*

AND NOW, this 17th day of January, 2018, the order of the Board, dated April 7, 2017, is hereby reversed.

_____
PATRICIA A. McCULLOUGH, Judge